Andrea S. BERGER, Trustee in Bankruptcy for W.D. Tripp and Mining Service Exchange, Plaintiff–Appellant,

v.

DIXON & SNOW, P.C., and Rod W. Snow, Defendants–Appellees.

No. 92CA1764.

Colorado Court of Appeals,
Div. V.

Sept. 9, 1993.

Rehearing Denied Oct. 7, 1993.

Certiorari Denied Feb. 28, 1994.

Butler, Landrum & Pierce, P.C., Robert G. Pierce, Lakewood, for plaintiff-appellant.

Cooper & Kelly, P.C., Frank R. Kennedy, Daniel R. McCune, Denver, for defendants-appellees.

Opinion by Judge DAVIDSON.

Plaintiff, Andrea S. Berger, trustee in bankruptcy for W.D. Tripp and Mining Service Exchange, appeals from various rulings of the trial court dismissing all claims for relief against defendants, Dixon & Snow, P.C., and Rod W. Snow, for failure to state a claim or on the ground that the statute of limitation had run. Berger also appeals from the trial court's rulings denying her motion for leave to amend her complaint and awarding costs to defendants. We reverse.

This controversy arises from an underlying dispute between Tripp and defendants' client, Robert Parga. As is pertinent here, a judgment for $437,000 was entered in favor of Parga after a jury trial. Defendants, acting for Parga, offered to settle the judgment for $250,000. Tripp accepted, but defendants, acting for Parga, attempted to revoke the offer. Defendants represented Parga throughout the settlement negotiations and in all subsequent legal dealings between Tripp and Parga.

Thereafter, Tripp filed a notice of appeal of the $437,000 judgment, posted a $480,000

supersedeas bond, and also filed a separate action against Parga to enforce the settlement agreement. The judgment was affirmed. *Parga v. Tripp,* (Colo.App. No. 83CA1329, September 11, 1986) (not selected for publication). Tripp unsuccessfully sought to delay payment of the bond proceeds until determination of the validity of the settlement agreement, and ultimately the bond company made payment to Parga. Defendants collected those proceeds and distributed them to Parga, less costs and contingency fees due defendants.

Subsequently, at the trial on the action to enforce the settlement agreement, the court determined that the settlement agreement was valid and that Parga had thus been unjustly enriched by $235,000—the difference between the $485,000 bond proceeds and the $250,000 for which Parga had agreed to settle. This court affirmed that judgment. *Tripp v. Parga,* 847 P.2d 165 (Colo.App. 1992).

The trustee then brought this action against defendants to recover the $235,000, or at least $78,333 which represents the portion of defendants' contingency fee that was based on the $235,000. The trustee's complaint alleged fraudulent and malicious conduct by defendants during negotiation of the settlement agreement and during the disbursement of the bond proceeds. Her other claims, based generally on the doctrine of restitution, included unjust enrichment, money had and received, quasi-contract, and constructive trust (collectively, restitution claims).

Upon a C.R.C.P. 12(b)(5) motion by defendants, the trial court dismissed all of the trustee's restitution claims for failure to state a claim, stating in pertinent part:

The court hereby finds that Plaintiff's claims arise out of Defendants' representations of their client against whom plaintiff was an adversary. The court further finds that Plaintiff's [restitution claims] for Relief do not state the claims against Defendants for fraudulent or malicious conduct and, therefore, do not state claims upon

which relief can be granted. The Court hereby Orders dismissal of those claims.

Subsequently defendants were granted summary judgment on the fraudulent and malicious conduct claim on the ground that the statute of limitation had run.

The trustee then moved to amend her complaint to assert a claim for creditor's bill. The trial court denied this motion as untimely. The court further awarded full costs to defendants under § 13–17–202, C.R.S. (1993 Cum.Supp.) as the trustee had rejected a timely offer of settlement by defendants.

## I.

The trustee first contends that the trial court erred in granting defendants' motion to dismiss her claims for unjust enrichment, money had and received, quasi-contract, and constructive trust. Although in her complaint the trustee appeared to allege claims for restitution of the entire $235,000 paid to Parga from the bond proceeds, her briefs on appeal indicate that she has narrowed her restitution claims to the $78,333 obtained by defendants as a contingent fee. Thus, we confine our review to that issue.

An attorney generally has no duty to his or her client's adversary. *See Weigel v. Hardesty,* 37 Colo.App. 541, 549 P.2d 1335 (1976). Under general equitable principles, however, after the reversal of a judgment, a person who has obtained benefits to which he or she is no longer entitled may be required to make restitution of those funds. *See, e.g., Atlantic Coast Line R.R. Co. v. Florida,* 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935).

The issue presented here, then, is whether a claim for relief in the nature of restitution may be asserted by a nonclient against an opposing party's attorney following a reduction of a judgment entered in favor of the opposing party. We agree with the trustee that such a claim is tenable.

## A.

We address first the threshold question whether, as the trial court found, Colorado

law effectively immunizes an attorney from liability against a nonclient's claim in the nature of restitution. We hold that it does not.

■ As noted above, while fulfilling his or her fiduciary duty to act in the client's best interests, an attorney generally has no duty to the client's adversary and therefore is liable only for injuries caused by his or her fraudulent, malicious, or intentionally tortious conduct. *See Allied Financial Services, Inc. v. Easley*, 676 F.2d 422 (10th Cir. 1982); *Rohda v. Franklin Life Insurance Co.*, 689 F.Supp. 1034 (D.Colo.1988); *Montano v. Land Title Guarantee Co.*, 778 P.2d 328 (Colo.App.1989); *see generally* Annot., 61 A.L.R. 4th 615 (1988).

Defendants thus argue that so long as fraud, malice, or an intentional tort is not alleged, attorneys have immunity from liability to nonclients regardless of the nature of the claim. We do not agree.

■ The remedy of restitution is based on the general principle that one should not be permitted to keep that which "in equity and good conscience" should be restored to another, and it encompasses, among others, the theories of recovery asserted here by trustee: unjust enrichment, quasi-contract, money had and received, and constructive trust. 1 D. Dobbs, *Law of Remedies* §§ 4.1–4.3 (2d ed. 1993); *see also Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093 (Colo.1982) (the application of quasi-contract or unjust enrichment is guided by the equitable principle of avoiding unjust enrichment at the expense of another); *Wheeler v. Wilkin*, 98 Colo. 568, 58 P.2d 1223 (1936) (an action for money had and received will lie when one has received money that in good conscience and equity ought to be paid over to another); *Botkin v. Pyle*, 91 Colo. 221, 14 P.2d 187 (1932) (constructive trust serves to secure property that would be against equity to allow holder to retain).

■ Contrary to defendants' assertion, Colorado cases which have addressed attor-

ney liability to nonclients have been restricted, on their facts, to claims for relief based on an alleged duty owed to the nonclient.

For example, in *Klancke v. Smith*, 829 P.2d 464 (Colo.App.1991), the heirs of a man killed in an accident sued their stepmother's attorneys for distributing all wrongful death proceeds to her, thus depriving them of their statutory entitlement. Their claims for negligence and breach of fiduciary duty were dismissed by summary judgment. A majority of a panel of this court affirmed, concluding that there was no duty owed by the attorneys to the heirs, either under the wrongful death statute or otherwise, and that there was no evidence of fraud or malice. The court did not address non-negligence claims, and we do not infer, as defendants ask us to do, that summary judgment would have been upheld if the heirs had brought a claim based on unjust enrichment.

Similarly, other appellate decisions immunizing attorneys have uniformly framed and addressed the question of liability within the context of breach of a duty owed to a nonclient and, accordingly, have based the determination of attorney immunity on considerations of an attorney's duty of loyalty and effective advocacy for his or her client, the nature of the adversarial relationship between the client's attorney and the other parties, and the potential liability to an unlimited number of third parties if liability is extended. *See Central Bank Denver v. Mehaffy, Rider, Windholz & Wilson*, 865 P.2d 862 (Colo.App.1993) (negligent misrepresentation); *Schmidt v. Frankewich*, 819 P.2d 1074 (Colo.App.1991) (third party beneficiaries to attorney/client contract); *McGee v. Hyatt Legal Services, Inc.*, 813 P.2d 754 (Colo.App.1990) (malpractice and negligent failure to supervise); *Montano v. Land Title Guarantee Co.*, *supra* (negligent misrepresentation); *Havens v. Hardesty*, 43 Colo. App. 162, 600 P.2d 116 (1979) (intentional tort); *Weigel v. Hardesty*, *supra* (negligent conduct). *See generally* Annot., 61 A.L.R. 4th 615 (1988).

■ Such considerations, however, are irrelevant to restitution claims. A claim for

equitable restitution does not depend upon a breach of substantive duty in tort or contract; restoration of a benefit may be ordered without a finding of fault or misconduct. 1 D. Dobbs, *Law of Remedies* § 4.1(2) (2d ed. 1993). *See Laura v. Christian*, 88 N.M. 127, 537 P.2d 1389 (1975) (co-tenant's right to contribution towards payment of lien not dependent upon any breach of tort or contract duty).

Additionally, we note that an attorney's entitlement to fees based upon a percentage of settlement proceeds depends entirely upon the extent of his or her client's interest in that judgment. *MCI Constructors, Inc. v. District Court*, 799 P.2d 40 (Colo.1990); *see Nichols v. Orr*, 63 Colo. 333, 166 P. 561 (1917) (although client settled dispute without consulting his attorney, his attorney was entitled only to a percentage of the settlement rather than a percentage of the judgment on which appeal was pending).

We conclude therefore that a claim for restitution of fees derived from a judgment which has been reduced does not interfere with any professional duties owed to a client and is not premised on an assertion of a duty owed to the nonclient. *See McCafferty v. Gilbank*, 249 Cal.App.2d 569, 57 Cal.Rptr. 695 (1967) (although certain implications bearing on professional responsibility crept into the case, the true question was whether the attorney defendant had distributed to his client settlement proceeds on which the plaintiff held an equitable lien).

■ Accordingly, such a claim by a nonclient is neither precluded by Colorado law nor against public policy and is consistent with general principles of equity. Thus, we hold that the general rule limiting the liability of an attorney to nonclients arising from professional conduct is inapplicable to the trustee's restitution claims and the trial court's dismissal of those claims on that basis was error.

### B.

We must next determine whether an attorney can be required to repay money received as a direct result of a judgment entered in his or her client's favor which is later reversed, vacated, modified, or otherwise set aside. We conclude that, under appropriate circumstances, such restitution may be ordered.

■ Although a person who has paid money to another in compliance with a judgment which is reversed or set aside is entitled to restitution, generally, "[an attorney] is under no duty to repay money which [the attorney] received on account of the judgment creditor and which [the attorney] retains as payment for services or for a debt owed by the judgment creditor to [the attorney] since [the attorney] received the money as a bona fide purchaser." Restatement of Restitution § 74 comment h (1937). *See Wall v. Johnson*, 80 So.2d 362 (Fla.1955) (in absence of fraud or deception, attorney not required to repay money retained as payment for services when the judgment is subsequently reversed).

■ However, under certain circumstances, restitution of fees by attorneys has been required. *See In re Marriage of Mason*, 48 Wash.App. 688, 740 P.2d 356 (1987) (because the attorney for the prevailing party was on notice of an appeal, aware of possible reversal, and therefore not a bona fide purchaser, restitution of fees was ordered); *see also Brown v. Howard*, 86 Cal. App. 532, 261 P. 732 (1927) (after judgment set aside, plaintiff's entitlement to restitution pursuant to stipulation signed by defendant's attorney meant that attorney must return fees he had retained from that money); *Champion International Corp. v. McChesney*, 239 Mont. 287, 779 P.2d 527 (1989) (since attorney in workers' compensation proceeding was aware that claimant could be required to reimburse employer for overpayment and his fees were based solely on benefits received by claimant, the attorney was required to repay the employer); *Bruns v. Mattocks*, 6 N.J.Super. 174, 70 A.2d 780 (1950) (restitution entered against attorney who was aware that return of taxed costs paid under compulsion would be expected in

the event of a reversal on appeal); *Transamerica Insurance Group v. Adams,* 62 Or. App. 419, 661 P.2d 937 (1983) (restitution allowed when attorney knew or should have known that if referee's approval of settlement was later set aside, the fees awarded as part of the settlement would also be set aside).

These cases strongly suggest that an attorney who accepts fees with the knowledge that the award on which those fees depend could be later reversed, vacated, modified, or otherwise set aside may be ordered to restore the fees.

Accepting, as we must, the allegations of the trustee's complaint as true, *see National Camera, Inc. v. Sanchez,* 832 P.2d 960 (Colo.App.1991), we conclude that because the trustee has alleged that defendants represented Parga throughout the litigation, were involved in all aspects of the settlement agreement, directly attempted to revoke an accepted settlement offer, were aware at the time that they distributed and received portions of the bond proceeds that an action to enforce that agreement was pending, knew that Tripp had sought to prevent distribution of those proceeds and actively and directly opposed his efforts, and knew of the possibility that the award from which the contingency fee derived might not stand, she has sufficiently stated claims in the nature of restitution. The dismissal of these claims for failure to state a claim under C.R.C.P. 12(b)(5) was therefore in error. *See Douglas County National Bank v. Pfeiff,* 809 P.2d 1100 (Colo. App.1991).

### C.

Because of our determination that dismissal of the trustee's restitution claims for failure to state a claim was erroneous, the issue of the timeliness of her motion to include a claim for creditor's bill is moot.

However, we note that defendants' contention that a creditor's bill may not reach a chose in action for a personal legal malpractice claim assumes that the trustee could only claim a return of the $78,333 in attorney fees through an action for legal malpractice to recover excess fees. To the contrary, as discussed above, the trustee's restitution claims are not based upon contentions of negligence or professional misconduct. *See Chalupa v. Preston,* 65 Colo. 400, 177 P. 965 (1918) (creditor's bill is action in equity to reach choses in action, equitable interests, or property of a judgment debtor that have been conveyed beyond the reach of the judgment and execution); *Equisearch, Inc. v. Lopez,* 722 P.2d 426 (Colo.App.1986) (creditor's bill could be brought by judgment creditor to secure property belonging to, due to, or held in trust for a judgment debtor, in order to satisfy judgment).

### II.

### A.

The trustee next argues that her claims against defendants for fraudulent and malicious conduct and for intentional tort did not accrue until November 1990 when the trial court determined that the settlement agreement was binding and that Parga had been unjustly enriched by $235,000. Thus, she contends, the trial court erred by determining that the three-year limitation period for fraud and the two-year limitation period for malicious conduct and intentional tort had run before her December 1991 filing of this action. We agree.

"A cause of action has commonly been understood to 'accrue' when a suit may be maintained thereon." *Jones v. Cox,* 828 P.2d 218, 224 (Colo.1992); *Roldan v. Allstate Insurance Co.,* 149 A.D.2d 20, 544 N.Y.S.2d 359 (1989) (accrues when plaintiff is able to state the elements of that cause of action).

In order to prevail on a claim for fraudulent or malicious conduct or for intentional tort, one must establish, *inter alia,* that the plaintiff has suffered injury caused by the defendant's conduct. *See Trimble v. City & County of Denver,* 697 P.2d 716 (Colo.1985) (intentional tort); *Western Cities Broadcasting v. Schueller,* 830 P.2d 1074 (Colo.App.

1991), *aff'd* 849 P.2d 44 (Colo.1993) (fraud); *Sancetta v. Apollo Stereo Music Co.*, 44 Colo. App. 292, 616 P.2d 182 (1980) (malicious conduct).

Here, it was not until November 1990 that the trial court determined that the $250,000 settlement agreement was binding and thus that Parga had been unjustly enriched by receipt of $235,000 overpayment from Tripp. Hence, injury was not established until the time of that decision, and no right to apply for relief existed prior to that holding. *See Vanderloop v. Progressive Casualty Insurance Co.*, 769 F.Supp. 1172 (D.Colo.1991) (in third party claim against insurer for bad faith, injury was not established until court imposed liability for an amount in excess of coverage).

The trustee's complaint was filed in December 1991. Thus, her action was filed well within either the two- or three-year limitation period. Hence, we conclude that her claims for fraudulent and malicious conduct and intentional tort were timely filed.

Because we have concluded that no cause of action existed prior to November 1990, we need not address the trustee's contention that the date of discovery of defendants' malicious and fraudulent conduct is a factual issue inappropriate for determination on summary judgment motion. *See* §§ 13–80–108(1) and 13–80–108(3), C.R.S. (1987 Repl. Vol. 6A).

### B.

 Because it may arise on remand, we note in relation to the trustee's restitution claims that such a claim does not accrue until "a suit may be maintained thereon." *Jones v. Cox, supra*, 828 P.2d at 224. Because trustee could not have maintained a claim for restitution until it was determined in November 1990 that the settlement agreement was binding and Parga's receipt of $235,000 was unjust, these claims could not have accrued

prior to that date; therefore suit was instituted within the applicable limitation period.

We do not reach the trustee's remaining contentions.

The dismissal of the trustee's complaint is reversed, and the award of costs to defendants under § 13–17–202 is vacated. The cause is remanded to the trial court for further proceedings consistent with this opinion.

STERNBERG, C.J., and COYTE,* J., concur.