No. 81,251

EXCEL CORPORATION, *Appellee,* v. LUDIVINA JIMENEZ,
*Defendant,* and HENRY GOERTZ, *Appellant.*
(7 P.3d 1118)

Opinion filed June
2, 2000.

*Kelly W. Johnston,* of The Johnston Law Offices, P.A., of Wichita, argued the
cause and was on the brief for appellant.

*Stephen M. Kerwick,* of Foulston & Siefkin, L.L.P., of Wichita, argued the
cause, and *David J. Rebein,* of the same firm, of Dodge City, was with him on the
brief for appellee.

*Constance L. Shidler* and *Kurt A. Level*, of Herndon & Level, Chtd., of Overland Park, were on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the was court delivered by

Six, J.: This summary judgment case concerns an employer's claim against an attorney for return of a 25 per cent contingent attorney fee arising from a fraudulent workers compensation award.

Plaintiff Excel Corporation filed a K.S.A. 44-5,120 *et seq.* "fraud and abuse" civil action. The district court ordered the defendant attorney, Henry Goertz, to return the fee. Goertz appeals.

The Kansas Trial Lawyers Association filed an *amicus* brief in support of Goertz.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion). We hold that Goertz, because of the contingent nature of the fee and his status as an officer of the court, must return the fee. The fee in issue is precluded by statutory provisions and is the fruit of a client's fraud. Thus, we affirm the judgment below in part; however, we disagree with the district court's rationale for imposing liability on Goertz.

We initially address Excel's claims under K.S.A. 44-5,120, 44-5,121, and 44-5,125. The fundamental question is who may be sued under the fraud and abuse provisions of K.S.A. 44-5,120 *et seq.* The answer is a defendant who "willfully or intentionally" commits a fraudulent or abusive act or practice. Goertz is an innocent party and, thus, is not liable to Excel under its statutory fraud claims.

We note that the legislature has amended 44-5,120 since this case arose. See K.S.A. 1999 Supp. 44-5,120. Our analysis is confined to the 1993 version of K.S.A. 44-5,120.

The parties submitted the statutory fraud claim to the district court on stipulated facts. A summary of the stipulation follows.

## FACTS

Ludivina Jimenez was injured while working for Excel at its meat packing plant. Goertz represented Jimenez in her workers compensation claim against Excel. At the time, Jimenez, who is not a party to this appeal, was a resident alien born in Mexico. After

reviewing the medical evaluations and a disputed videotape surveillance of Jimenez, the administrative law judge (ALJ) entered an award. The ALJ found Jimenez was entitled to $7,349.65 based on a 6 per cent permanent partial impairment to her body as a whole.

Goertz sought a larger award for his client. He appealed the ALJ's decision to the Director of Workers Compensation. The Director affirmed the 6 per cent award. Goertz then appealed to the district court. The district court increased the award to $30,614.55, plus benefits previously paid, finding that Jimenez suffered from a 25 per cent permanent partial disability. The additional $30,614,55 award was to be paid in weekly installments.

Jimenez informed Goertz she had moved to Texas. She asked Goertz to pursue a lump-sum settlement. Settlement negotiations commenced. Excel filed a motion for review and modification of the district court award. Goertz informed Jimenez of the pending motion. He reported to Excel that Jimenez was working 25 to 30 hours per week within her restrictions at a plastics factory in Texas. He submitted another settlement offer. Excel told Goertz that it suspected Jimenez was working full time at National Beef in Kansas performing similar work to that done for Excel. Jimenez did not tell Goertz of her Kansas employment. Goertz tried unsuccessfully to contact Jimenez in Texas. He verified the allegation with National Beef and withdrew from his representation.

Jimenez admitted that she misrepresented her employment status to receive a higher award. The ALJ found Jimenez lied to receive additional benefits. He restored the original 6 per cent award. The ALJ also referred the case to the Attorney General's office for further investigation.

After the ALJ's ruling on modification, Goertz, without deducting a fee, returned $1,401.63 in weekly disability payments held in his trust account. However, he had previously retained $1,588.46 in attorney fees from the fraudulent award. This lawsuit followed Goertz' refusal to return the $1,588.46 to Excel. Excel obtained a $6,352.94 judgment against Jimenez (the entire amount of fraudulent benefits paid to Jimenez during the settlement negotiations). Excel did not attempt to collect the judgment.

Excel does not claim reimbursement for any fees paid to Goertz on the legitimate $7,349.65 (6 per cent) award. Excel's petition asserted three theories of liability: (1) a civil action under K.S.A. 44-5,121; (2) unjust enrichment; and (3) constructive fraud based on the assertion that Goertz did not fully investigate his client's claims. (The latter two theories were dismissed with prejudice before summary judgment.) The case was submitted to the district court solely on the K.S.A. 44-5,121 claim. The parties stipulated Goertz committed no intentional or willful misconduct with respect to the fraud.

The district court examined the class of persons against whom an action may be brought under K.S.A. 44-5,121. According to the district court, the class includes anyone who has been paid benefits or other amounts of money under the Workers Compensation Act (Act), K.S.A. 44-501 *et seq.* Because K.S.A. 44-5,120(b) expressly included attorneys as persons subject to the fraud and abuse provisions, the district court reasoned Goertz was liable to Excel for the fee arising from the fraudulent benefits. The district court also awarded Excel interest on the fee under 44-5,125(b).

This case presents issues of first impression concerning the nature of the rights created under the Act for fraud. The fundamental question is whether the fraud and abuse provisions require a defendant to have knowingly participated in the fraud. We note that attorneys are not the only persons expressly subject to 44-5,120 *et seq.* Hospitals, doctors, and other health care professionals are also covered. See K.S.A. 44-5,120(b)(4) and (5).

### The Statutory Fraud Claims

We now turn to a discussion of Excel's statutory fraud claims. A brief review of legislative history is appropriate. In 1993, the insurance industry and the Kansas Insurance Commissioner's Workers Compensation Task Force set out to reform the Act. See Shultz & Shultz, *For Workers Compensation A Civil Remedy: Fraud and Abuse,* 19 J.K.T.L.A. 32 (July 1996). The result was the enactment of the K.S.A. 44-5,120 *et seq.* fraud and abuse provisions. These provisions were designed to afford a remedy to those who are damaged by fraudulent acts or practices in a workers compensation

proceeding. *Elliott v. Dillon Companies*, 21 Kan. App. 2d 908, 911-12, 908 P. 2d 1345, *aff'd* 260 Kan. 411, 918 P.2d 1305 (1996). The only substantial changes were in 1997 (L. 1997, ch. 125, § 20) and 1998 (L. 1998, ch. 114, § 7 and 8). In 1997, the legislature added an exhaustion of administrative remedies requirement and in 1998, it strengthened the criminal penalties for committing fraudulent or abusive acts.

*Elliott* is the only case discussing the statutory fraud and abuse provisions. Elliott, a workers compensation claimant, sued her employer, its insurer, and defendants' attorney. The defendants maintained K.S.A. 44-5,121 did not authorize a suit by a workers compensation claimant. In rejecting the defendants' contentions, the Court of Appeals held that the statute "authorizes any person, including a claimant, who has suffered economic loss by a fraudulent or abusive act or practice to bring a cause of action under K.S.A. 44-5,121." 21 Kan. App. 2d at 912. *Elliott* also observed "K.S.A. 44-5,125(b) requires any person who received any payment or otherwise benefitted monetarily as a result of such criminal conduct to repay the amount with interest." 21 Kan. App. 2d at 912. *Elliott* did not say who is included in the definition of "any person," which is at issue here. *Elliott* answered only the question of *who may sue* under the fraud and abuse provisions. We must now answer the question of *who may be sued* under K.S.A. 44-5,120 *et seq.* A search of legislative history is unproductive.

We have de novo review of cases decided on stipulated facts. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987). The parties agree the interpretation of a statute is a question of law over which we exercise unlimited review. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

Goertz' primary argument is that no one may be held liable under either K.S.A. 44-5,121 or 44-5,125 unless his or her conduct is knowing, willful, or intentional. K.S.A. 44-5,120(d) defines fraudulent or abusive acts or practices in a nonexclusive list: "(d) Fraudulent or abusive acts or practices for purposes of the workers compensation act include, but are not limited to, willfully or

intentionally: [Twenty separate fraudulent or abusive acts are listed.]"

Claims to recover losses due to fraudulent or abusive acts are set out in both K.S.A. 44-5,121(a) and 44-5,125(c). Excel brought its claim under K.S.A. 44-5,121, but the district court found Goertz liable under K.S.A. 44-5,125.

The legislature's intent, according to Excel, was to provide a basis for recovery of economic losses due to fraudulent or abusive practices in workers compensation cases. Excel asserts "the statute carefully elects not to tie the ability to recover under such a cause of action in every situation to participation in the fraudulent or abusive act." We disagree.

We hold that liability rests only with persons who act willfully or intentionally. (K.S.A. 1999 Supp. 44-5,120[d] now includes the word "knowingly" as well.) K.S.A. 44-5,120(d) creates two classes: (1) those who will have a claim (plaintiffs), and (2) those who have committed fraudulent or abusive acts or practices (defendants). Only those who have actually committed a fraudulent or abusive act may be liable.

K.S.A. 44-5,121(a) says:

"Any person who has suffered economic loss by a fraudulent or abusive act or practice shall have a cause of action against any other person to recover such loss which was paid as benefits or other amounts of money which were paid under the workers compensation act and to seek relief for other monetary damages from such other person *based on a fraudulent or abusive act or practice . . . .*" (Emphasis added.)

K.S.A. 44-5,125 states in part:

"(b) *Any person* who has received any amount of money as a benefit or other payment under the workers compensation act as a result of a violation of subsection (a) and *any person who has otherwise benefited monetarily* as a result of a violation of subsection (a) shall be liable to repay an amount equal to the amount so received by such person or the amount by which such person has benefited monetarily, with interest thereon. . . .

"(c) *Any person* aggrieved by a violation of subsection (a) *shall have a cause of action against any other person* to recover any amounts of money erroneously paid as benefits or any other amounts of money paid under the workers compensation act, and to seek relief for other monetary damages . . . ." (Emphasis added.)

We read K.S.A. 44-5,121(a) to mean any person (entity) who has suffered economic loss by a fraudulent or abusive act or practice (here Excel) has a cause of action against any other person (Jimenez) to recover the loss which was paid as benefits under the Act. The recovery must be based on "a fraudulent or abusive act or practice" by the person against whom recovery is sought.

Here, Jimenez has admitted that her conduct was willful and intentional; thus, there is no doubt that a fraudulent act was committed. Excel is an entity that has suffered economic loss due to Jimenez' fraudulent act. Goertz is a person who received a portion of the fraudulently paid benefits. However, his act was neither willful nor intentional. He committed no "fraudulent or abusive act or practice."

The class of potential defendants in 44-5,121(a) and 44-5,125(c) appears to be identical, as the same two categories are delineated in each statute as those receiving: (1) "benefits" or (2) "other amounts of money which were paid under the workers compensation act." But, 44-5,125 has the added language italicized below:

"(c) Any person aggrieved by a violation of subsection (a) shall have a cause of action against any other person to recover any amounts of money erroneously paid as benefits or any other amounts of money paid under the workers compensation act, and to seek relief for other monetary damages *for which liability has accrued under this section against such other person.*" (Emphasis added.)

The K.S.A. 44-5,125(c) language tells us that the cause of action in 44-5,125(c) is limited to those for whom liability has accrued under 44-5,125. Subsection (b) of 44-5,125 sets out who is liable:

"(b) Any person who has received any amount of money as a benefit or other payment under the workers compensation act as a result of a violation of subsection (a) and any person who has otherwise benefited monetarily as a result of a violation of subsection (a) shall be liable to repay an amount equal to the amount so received by such person or the amount by which such person has benefited monetarily, with interest thereon."

Subsection (a) of K.S.A. 44-5,125 sets out the elements of criminal liability. The version applicable here listed specific knowing and intentional acts that would constitute a violation and lead to criminal liability. (The criminal liability sections have been expanded since enactment.) (See K.S.A. 1999 Supp. 44-5,125[a], [b],

[c] and [d].) We acknowledge that the language of K.S.A. 44-5,125(b) is less than clear. The statute would appear to make anyone who ever received money from a fraudulent award liable. However, as a matter of policy and statutory construction, this cannot be the case.

Doctors and hospitals could be sued to repay insurance carriers for medical services offered to the "injured" worker. Under similar circumstances, court reporters, vocational experts, copy services, nurse case managers, and insurance adjusters could be made to repay earned fees even if they did not intentionally perpetrate a fraud or abuse the system. We do not believe the legislature intended this result.

Not only is such an interpretation of 44-5,125(b) against public policy, it is contrary to a fundamental rule of statutory construction. A construction that makes part of a legislative act surplusage should be avoided if reasonably possible. *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 (1990).

The district court held Excel had a cause of action under either 44-5,121 or 44-5,125. The two statutes proscribe similar conduct, but there are notable differences. K.S.A. 44-5,125(a) sets out the criminal penalties for specific fraudulent or abuse acts. Damages under 44-5,121 include monetary damages but not "nonpecuniary loss." K.S.A. 44-5,125 permits recovery of monetary damages and prejudgment interest and has no exclusion of "nonpecuniary loss." These differences in available damages lead us to question whether, as Excel urges, 44-5,121 and 44-5,125 are identical causes of action. Under Excel's interpretation, 44,5-121 is surplusage.

We conclude that K.S.A. 44-5,121(a) and 44-5,125(c) are different causes of action based on the culpability of the wrongdoer. K.S.A. 44-5,121(a) is applicable where one is able to simply prove a "knowing or willful" act was committed. However, 44-5,125 is a more specific statute. K.S.A. 44-5,125 addresses specific knowing and willful acts. The three acts specifically outlined in subsection (a)(1) are: (A) making a false or misleading statement, (B) misrepresenting or concealing a material fact, or (C) fabricating, altering, concealing or destroying a document. (The current version lists additional specific acts constituting crimes. See K.S.A. 1998 Supp.

44-5,125[a][1][D] and [E], [b], and [c].) Those found guilty of committing the knowing and willful acts specified in 44-5,125(a) may be convicted of a misdemeanor or felony (depending on how much money was received). Those who suffered a loss as a result of the acts specified in 44-5,125(a) may collect damages not available under 44-5,121(a). Thus, the difference in damages one may collect is commensurate with the level of culpability one must show.

We construe 44-5,125(b) as applicable only to those who have violated subsection 44-5,125(a). Such an interpretation carries out the legislature's intention and gives effect to 44-5,121(a), instead of rendering it surplusage. See *State v. ex rel. Stephan*, 246 Kan. at 719.

We note that, contrary to Goertz' argument, a conviction is not a prerequisite to liability under K.S.A. 44-5,125. A violation is required, but a conviction is not. Goertz could not be found liable under 44-5,125(b) because he committed no act enumerated in 44-5,125(a).

The provisions of K.S.A. 44-5,120 *et seq.* seek to punish only those who commit fraudulent or abusive acts; consequently, we need not reach Goertz' final contention that focuses on the reimbursement provisions of K.S.A. 44-534a(b).

## Notice to Counsel

After oral argument, we issued a notice to counsel stating three factual premises and inviting comment upon the following issue:

"Whereas:

"1.   The parties have stipulated to the facts;

"2.   The Administrative Law Judge has reinstated the original award herein in the amount of $7,349.65; and

"3.   Henry Goertz has received attorney fees in excess of the 25% maximum contingent fee allowable on said award pursuant to K.S.A. 44-536.

"The court invites counsel to comment on the following question:

Why should not judgment for the excess fee ($1,588.46) be entered against Goertz and in favor of Excel Corporation?

Any response should be filed in writing with the Clerk within 20 days from the date hereof."

Both parties timely responded.

We must consider the interplay between Goertz' status as an officer of the court, the character of a contingent fee, and the fraudulent funds in issue here.

Excel's petition in counts II and III asserted the 25 per cent K.S.A. 44-536 limitation on Goertz' contingent fee entitlement. A copy of the ALJ's order on review and modification was attached as a petition exhibit. The stipulated facts reflect the ALJ modified the larger award by reinstating the original 6 per cent award, thus vacating the fraudulent award.

K.S.A. 44-536(a) provides in part:

"[N]o claim of any attorney for services rendered in connection with the securing of compensation for an employee or the employee's dependents, whether secured by agreement, order, award or a judgment in any court shall exceed a reasonable amount for such services or 25% of *the amount of compensation recovered* and paid, whichever is less." (Emphasis added.)

The $1,588.46 at issue is more than the maximum 25 per cent contingent fee permitted by K.S.A. 44-536. Goertz has received a 25 per cent contingent fee from the legitimate $7,349.65 award to Jimenez. This fee is not in issue. The question is whether Goertz may retain an additional 25 per cent of the fraud-induced monies as an attorney fee over the K.S.A. 44-536(a) statutory maximum.

Excel sees no reason why judgment should not be entered against Goertz based on K.S.A. 44-536. Of course, Goertz disagrees. Goertz makes two arguments in response to our notice to counsel: (1) Under K.S.A. 44-556 "excess payments" (including excess attorney fees) made to injured workers are recoverable only through the workers compensation fund; and (2) only an administrative law judge may determine whether an attorney fee is prohibited by K.S.A. 44-536.

The first argument is not persuasive. Goertz reasons that because injured workers (and their attorneys) are not forced to refund excess payments under K.S.A. 44-556, attorneys may not be forced to do so under the facts here. K.S.A. 44-556 is not applicable. This case does not concern excess benefits. This case involves a fraudulently obtained award. The legislature clearly distinguished fraudulently obtained benefits from excess payments when it enacted K.S.A. 44-5,120 *et seq.* An employee may be held personally and

criminally liable for acting fraudulently in obtaining workers compensation funds under K.S.A. 44-5,121(a) and 44-5,125. Conversely, K.S.A. 44-556(d) expressly prohibits an employer from seeking reimbursement of excess benefits from injured workers. A legislative distinction exists between excess benefits and fraudulently obtained benefits; the latter is recoverable under K.S.A. 44-5,121(a) and 44-5,125.

Goertz' second argument deserves further discussion. All disputes regarding attorney fees in workers compensation cases must be initiated with and heard by the ALJ. K.S.A. 44-536(h). Excel has not challenged Goertz' fee under the provisions of K.S.A. 44-536.

We acknowledge Goertz' jurisdictional argument. Nevertheless, we are troubled by the blending here of Jimenez' fraud, the disputed fee as a per cent of her fraudulent recovery, and Goertz' status as an officer of the court. A contingent fee is based on the concept that a claimant's lawyer will not receive compensation until the matter is concluded and only if the lawyer has been successful in securing a judgment for the client. *Gigot v. Cities Service Oil Co.*, 241 Kan. 304, 316, 737 P.2d 18 (1987) (quoting *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 223-24, 679 P.2d 1159 [1984]). A contingent fee owes its existence to a recovery. No recovery, no fee. Because the fraudulent award was vacated, there is no recovery.

A discussion of contingent attorney fee restitution claims provides background for our analysis. We have no Kansas cases on the question.

The Eighth Circuit, in a contingency fee case arising from Minnesota, said:

"Although we agree that the law of restitution generally will not require an attorney to repay legal fees paid by a client from a judgment that is subsequently reversed on appeal, restitution by the attorney is appropriate where such a payment is made pursuant to a contingent fee." *Mohamed v. Kerr,* 91 F.3d 1124, 1126 (1996) (*Mohamed* II).

Joan Mohamed and Ivan Kerr were married. As part of his employment compensation, Ivan completed a benefits enrollment

form designating Joan as the beneficiary of a group life insurance policy. Two years later, the marriage was dissolved. A marriage termination agreement provided that each party was awarded life insurance policies with any cash value thereon free and clear of any claim by the other party.

Ivan died. Joan sued the life insurance company for the proceeds of Ivan's life insurance. Because Ivan's estate and son contested Joan's claim, the company removed the action to federal court, brought an interpleader action, and deposited the insurance proceeds with the court.

Joan's motion for summary judgment was granted. Under the court's order, the clerk disbursed the funds ($279,012.86) to Joan's attorney. After receiving an advisory opinion from the Lawyer's Board of Professional Responsibility that he was obligated to turn over the funds to his client, Joan's attorney disbursed the judgment to Joan, except for his contingent fee.

The Eighth Circuit reversed summary judgment in favor of Joan and ordered that summary judgment be granted in favor of Ivan's estate and son. *Mohamed v. Kerr,* 53 F.3d 911, 917 (8th Cir. 1995) (*Mohamed I*). On remand, the federal district court ordered Joan to return the life insurance proceeds to the clerk of the court. Ivan's estate and son moved to compel Joan's attorney to return the contingent fee paid to him from the judgment proceeds. The magistrate judge declined. The Court of Appeals reversed. 91 F.3d at 1124.

The *Mohamed II* court observed:

"[W]here a judgment creditor pays her attorney for legal services rendered from the judgment proceeds, the attorney is under no duty to repay the money if the judgment is subsequently reversed. Restatement of Restitution § 74 cmt. h, illus. 20. Thus, were the proceeds retained by McCullough [the attorney] simply payment for services rendered—and therefore, a tangible debt owed to him by Mohamed—requiring repayment would not be appropriate.

"The relevant fact that distinguishes this case from the protection normally afforded payments to attorneys, as innocent payees, is the nature of the fee arrangement: *a contingent legal fee.* In other words, McCullough was to be paid a set percentage of any recovery made on behalf of Mohamed. The contingent fee is dependent on success; the attorney assumes, along with the client, the inherent risks of litigation." (Emphasis added.) 91 F.3d at 1126-27.

We agree. We also agree with the *Mohamed II* court's reliance on the Restatement of Restitution in a contingent fee case. "In this type of case, McCullough's relationship to the litigation's outcome is analogous to that of a real party in interest, and he is similarly under a duty to restore the amount received by him. See Restatement of Restitution § 74 cmt. k." 91 F.3d at 1127. See also *Pocius v. Halvorsen,* 30 Ill. 2d 73, 84-85, 195 N.E.2d 137 (1963) (a contingent fee must be returned to its source if the litigation is ultimately unsuccessful on appeal).

By signing a contingency contract, Goertz acquired a beneficial interest in the final award. Thus, he became a beneficial owner of the award. Because he is entitled to a percentage of the award, he may be responsible for restitution should the award be vacated. Goertz can have no greater right than the validity of the award.

The Colorado Court of Appeals, in *Berger v. Dixon & Snow, P.C.,* 868 P.2d 1149, 1154 (Colo. App. 1993), said: "[A]n attorney who accepts fees with the knowledge that the award on which those fees depend could be later reversed, vacated, modified, or otherwise set aside may be ordered to restore the fees." *Berger* cited the following cases for authority: *"In re Marriage of Mason,* 48 Wash. App. 688, 740 P.2d 356 (1987) (because the attorney for the prevailing party was on notice of an appeal, aware of possible reversal, and therefore not a bona fide purchaser, restitution of fees was ordered); see also *Brown v. Howard,* 86 Cal. App. 532, 261 P. 732 (1927) (after judgment set aside, plaintiff's entitlement to restitution pursuant to stipulation signed by defendant's attorney meant that attorney must return fees he had retained from that money); *Champion International Corp. v. McChesney,* 239 Mont. 287, 779 P.2d 527 (1989) (since attorney in workers' compensation proceeding was aware that claimant could be required to reimburse employer for overpayment and his fees were based solely on benefits received by claimant, the attorney was required to repay the employer); *Bruns v. Mattocks,* 6 N.J.Super. 174, 70 A.2d 780 (1950) (restitution entered against attorney who was aware that return of taxed costs paid under compulsion would be expected in the event of a reversal on appeal); *Transamerica Insurance Group v. Adams,* 62 Or. App. 419, 661 P.2d 937 (1983) (restitution al-

lowed when attorney knew or should have known that if referee's approval of settlement was later set aside, the fees awarded as part of the settlement would also be set aside)." 868 P.2d at 1153-54. As *Berger* aptly recognized, a lawyer may be required to return a contingent fee in many different contexts. 868 P.2d at 1153. One of those contexts is present here. The fraudulent award was vacated.

We also comment on an older attorney fee case from Florida relied on by the dissent, *Wall v. Johnson*, 80 So. 2d 362 (Fla. 1955), where the court held the trial court did not abuse its discretion in refusing to order restitution. *Wall* did not involve contingent fees and, therefore, is not applicable here.

The dissent also relies on *Martin v. Lenahan*, 658 So. 2d 119 (Fla. Dist. App. 1995). *Martin* arose in a fraudulent medical malpractice context. At trial, the jury returned a verdict of $2,488,000 in damages, finding that the negligence of the defendant, Dr. Martin, caused several definite and distinct injuries to plaintiff Lenahan. A settlement was entered for $2,250,000 as full and complete satisfaction of the judgment. Lenahan's attorneys, Grossman and Roth, P.A. received a $750,000 fee, of which $250,000 was paid to referring attorneys.

Before the settlement, Dr. Martin suspected Lenahan's claims were grossly exaggerated and undertook videotape surveillance. The investigation of Lenahan's claims culminated in criminal fraud convictions of Lenahan and his wife. The Lenahans later entered into a settlement with Dr. Martin and his insurance company. The parties stipulated that a motion for relief from judgment would be granted and the Lenahans would make partial restitution of the funds received in the civil action. Dr. Martin and his insurance company in return agreed not to oppose the Lenahans' plea for reduction of sentence if their convictions were upheld on appeal. The settlement agreement specifically stated that it would not affect Dr. Martin's right to recover attorney fees and costs paid from the $2,250,000 settlement and satisfaction of the judgment in the civil action. Grossman and Roth, P.A. were not parties to the settlement.

The *Martin* court held Grossman and Roth, P.A. was not liable for restitution, relying on Restatement of the Law of Restitution,

§ 74 Comment h (1936). 658 So. 2d at 120-21. Comment h addresses restitution from judgment creditors. *Martin* emphasized the fact that Dr. Martin chose not to proceed against the Lenahans for the full settlement amount and did not include Grossman and Roth, P.A. in the proceeding.

We agree with the Eighth Circuit in *Mohamed* that Comment h is not applicable in a contingent fee case because the attorney receiving a contingent fee is more like a real party in interest than a bona fide purchaser or a judgment creditor. 91 F.3d at 1126-27.

Here, we have stipulated facts. Not only does Goertz' disputed fee exceed the K.S.A. 44-536 statutory limit, the fee is also a percentage of the funds Jimenez fraudulently obtained. Goertz has prevailed on his argument against Excel's K.S.A. 44-5,120 *et seq.* claims. He is not subject to the 44-5,125 interest judgment. The rationale for our decision requiring Goertz to return the $1,588.46 is grounded on policy. We carry the responsibility of supervising attorneys as officers of the court. K.S.A. 7-103. The payments here, representing fraudulently obtained benefits generated by Goertz' client's lies, were paid by Excel to Goertz, who forwarded the funds less 25 per cent to Jimenez. Goertz' status as an officer of the court places him on a different legal footing than other professionals covered by the provisions of K.S.A. 44-5,120 *et seq.* Under the unique facts here, we cannot approve a contingent fee precluded by statutory provisions. See KRPC 1.5(f)(3) (1999 Kan. Ct. R. Annot. 313-14): "A lawyer shall not enter into an arrangement for, charge, or collect . . . a contingent fee in any other matter in which such a fee is precluded by statute." We cannot approve Goertz' fee retention of the portion of his client's benefits, representing the fruit of fraud. Our decision is also supported by the Restatement of the Law of Restitution, § 74 Comment k (a real party in interest) and case law analysis.

The district court was correct in ordering Goertz to return the disputed $1,588.46, but for the wrong reason. See *Bergstrom v. Noah,* 266 Kan. 847, Syl. ¶ 7, 974 P.2d 531 (1999). We affirm the district court's decision as modified by this opinion.

LOCKETT, J., concurring and dissenting: This is the most difficult statement I have made in my years on this court. First, I will agree

that the majority in deciding the issue raised by the parties has correctly interpreted the statutes. I will then criticize the majority's twisted path to reach a result it desired. Under the guise of public policy, the majority disregards the legislature's enactment it has just determined and, by use of the Rules of the Kansas Supreme Court, creates a separate cause of action based on the same fraudulent act.

I concur with the majority's ruling that the legislative purpose in enacting K.S.A. 44-5,120 through 44-5,125 was to provide a remedy to those who are damaged by an individual or individuals who commit fraudulent acts or practices as stated in the Workers Compensation Act. In reaching its decision, the majority declares that the provisions of K.S.A. 44-5,120 *et seq.* punish only those who *commit* fraudulent or abusive acts and concludes that an attorney who does not commit a fraudulent act is not liable under K.S.A. 44-5,121 or 44-5,125. The majority then asserts "such an interpretation of 44-5,125(b) [is] against public policy, [and] contrary to a fundamental rule of statutory construction." I agree.

After ruling that the fee paid the attorney who had not acted fraudulently was not subject to reimbursement under K.S.A. 44-5,121 or 44-5,125, the majority departs from the issues raised by the parties and announces as a matter of policy that the Kansas Supreme Court will not permit an attorney, because of the unique status an attorney holds as an officer of the court, to retain a contingent fee that is precluded by statutory provisions and is the fruit of a client's fraud. This statement is puzzling and misleading because the majority had just determined the fee was not precluded by the legislative act or the common law.

### The Limited Role of the Court

The Kansas Constitution grants the power to enact new laws and to amend existing laws exclusively to the legislative branch of government. Kan. Const. Art. 2, § 1. All governmental sovereign power is vested in the legislature, except such as is granted to the other branches of government, or expressly withheld from the legislature by constitutional restrictions. *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, Syl. ¶ 1, 789 P.2d 541 (1990), *overruled*

*in part on other grounds* 248 Kan. 824, 844, 811 P.2d 1176 (1991). It is the primary duty of the courts to safeguard the declaration of rights and remedies guaranteed by constitutional provisions. *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, Syl. ¶ 2.

Courts in Kansas are vested with judicial power, which is the "power to hear, consider and determine controversies between rival litigants." *State, ex rel., v. Mohler*, 98 Kan. 465, 471, 158 Pac. 408 (1916), *aff'd* 248 U.S. 112, 63 L. Ed. 153, 39 S. Ct. 32 (1918); see also *U.S.D. No. 380 v. McMillen*, 252 Kan. 451, Syl. ¶ 5, 845 P.2d 676 (1993) ("The judiciary interprets, explains, and applies the law to controversies."). Courts are limited to the exercise of judicial power in interpreting statutes or applying the common law and may not usurp the legislative power of determining policy matters or the executive power of implementing such policy. *State v. Brady*, 156 Kan. 831, 843, 137 P.2d 206 (1943) (court's role in implementing death penalty and clemency issues); see *Tomasic v. Unified Government of Wyandotte County/Kansas City, Kan.*, 264 Kan. 293, 337-38, 955 P.2d 1136 (1998).

With a clear stated purpose, the majority violates the Kansas Constitution's restrictions and legislates a cause of action that requires Goertz, as an officer of the court, to reimburse to the insurance carrier that portion of the contingent fee obtained due to the fraudulent act of a client. To reach the desired result, the majority founded its new cause of action on the rule adopted by our Supreme Court in KRPC 1.5(f)(3) (1999 Kan. Ct. R. Annot. 313-14), which provides: "A lawyer shall not enter into an arrangement for, charge, or collect . . . a contingent fee in any other matter in which such a [contingent] fee is precluded by statute."

The majority's rationale in creating a cause of action is based on the Kansas Supreme Court's responsibility of supervising Kansas attorneys, pursuant to K.S.A. 7-103. That statute provides:

"The supreme court of this state may make such rules as it may deem necessary for the *examination of applicants for admission to the bar of this state and for the discipline and disbarment of attorneys.*"(Emphasis added.)

This case does not concern the examination of applicants for admission to the bar, attorney discipline, or attorney disbarment.

Therefore, K.S.A. 7-103 does not provide authority for the Supreme Court to order Goertz to reimburse Excel under the guise of supervision of Goertz as an officer of the court.

The majority states that Goertz, an officer of the court who had a contingent fee agreement with a client, is different from the other professionals covered by K.S.A. 44-5,120 *et seq.* It concludes that *as a matter of public policy*, the Kansas Supreme Court cannot approve Goertz' retention of that portion of the fee obtained through his client's fraud and orders Goertz to return the disputed $1,588.46 of his fee. Unlike other professionals, Goertz, an officer of the court, is now subject to a separate court-created civil action, and, although he did not violate a legislative act, he is subject to disciplinary measures if he fails to obey the rule of the court.

The court has no right to enlarge the scope of the statute or to amend it by judicial interpretation. *Coe v. Security National Ins. Co.*, 228 Kan. 624, 629, 620 P.2d 1108 (1980). Pursuant to K.S.A. 44-5,120, Excel's cause of action is against those who committed fraudulent acts, *i.e.*, the workers compensation claimant, not her attorney who was innocent of fraud and legally earned compensation commensurate with the award he obtained for his client.

## Other Jurisdictions

In creating the cause of action, the majority first disregards relevant decisions of other states. In *Wall v. Johnson*, 80 So. 2d 362 (Fla. 1955), the Florida Supreme Court determined that an attorney who acted in good faith in obtaining a judgment which is later set aside is not obligated to make restitution of attorney fees.

In *Wall*, attorneys obtained a final decree adjudicating Leonard Wall as the father of his client's child. The decree required Wall to pay the client $50 per month and the attorney a $500 fee. On appeal, the judgment was reversed because of the statute of limitations. Wall then sought restitution from the attorneys of the $500 fee he had paid under the court's decree. The Florida court noted:

" 'The general rule is that even though the attorney retains as payment for his services, or for some other debt owing by his client, under an agreement with the latter, part or all of the proceeds of a judgment recovered by the client which is subsequently reversed, he is not obliged to make restitution to the judgment

debtor provided he acted in good faith in prosecuting the action in which the judgment was recovered. But if the judgment was void, or if the attorney knew if was obtained by fraud or he otherwise did not act in good faith in retaining the money, he is liable to make restitution.' " 80 So. 2d at 363.

"Said judgment was not secured by fraud, error or deception. There is every showing of good faith on the part of counsel who secured it; there is no showing in equity to support restitution, in fact under the showing made, it would be most inequitable to require it. If ever a court was warranted in leaving a plaintiff where it found him to 'stew in his own juice,' this is it." 80 So. 2d at 364.

The *Wall* court held that even though a judgment is subsequently reversed, an attorney is not obligated to make restitution to the other party if the attorney acted in good faith in prosecuting the action in which the judgment was originally recovered. Because the attorney had not acted in bad faith or committed fraud in prosecuting the action, the attorney was not ordered by the *Wall* court to return the fee.

In 1995, the Florida Supreme Court reaffirmed *Wall* in *Martin v. Lenahan*, 658 So. 2d 119 (Fla. Dist. App. 1995). In *Martin*, Douglas Martin, M.D., and his insurance company appealed from an adverse final order on their claim for restitution of contingent attorney fees which had been paid from a settlement on behalf of clients who had fraudulently won the award from the doctor. The patient, William Lenahan, claimed the doctor's malpractice caused severe and debilitating physical and mental injuries. At trial, the jury returned a verdict of $2,488,000 in damages and found that Dr. Martin's negligence caused several definite and distinct injuries to Lenahan. A settlement was subsequently negotiated for $2,250,000 as full and complete satisfaction of the judgment. The attorney received $750,000 in fees, of which $250,000 was paid to referring attorneys.

Dr. Martin suspected that Lenahan's claims were grossly exaggerated. After the settlement and exchange of funds, Dr. Martin's investigation of Lenahan's claims continued and culminated in the filing of criminal fraud charges against the Lenahans. The Lenahans' attorney withdrew from the representation of the Lenahans in the civil matter after the fraud was uncovered.

Lenahan and his wife were convicted of the criminal charges. Subsequently, the Lenahans entered into a settlement with Dr.

Martin and his insurance company. The settlement agreement specifically stated that it would not affect Dr. Martin's right to recover attorney fees and costs paid from the $2,250,000 settlement. Based on the stipulation, the trial court granted relief from the judgment. Because the attorney was not a party to the settlement, the trial court refused to order restitution from the Lenahans' attorney. Dr. Martin and his insurance company appealed.

The *Martin* court found *Wall* controlling. The Florida court, in accordance with *Wall,* held that the attorney was not liable for restitution, as there was no evidence of any complicity in the fraud perpetrated by the Lenahans and because the attorney was not a party to the malpractice proceeding, but rather was a third party paid for valuable services who did not engage in any known wrongdoing.

In addition to the *Wall* case, the *Martin* court relied on Restatement of the Law of Restitution § 74, Comment h (1936). As quoted in the opinion, the section provides:

> " 'h. Restitution from attorney or agent of judgment creditor. An attorney or other agent of the judgment creditor who receives payment from the judgment debtor or who receives the proceeds of sale of the debtor's things and who pays it to the judgment creditor before reversal is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it. Under the same conditions he is under no duty to repay money which he received on account of the judgment creditor and which he retains as payment for services or for a debt owed by the judgment creditor to him (see Illustration 20) since he received the money as a bona fide purchaser. On the other hand, the attorney of the judgment creditor who conducted the proceedings is not entitled to retain property which he purchased on execution sale under the judgment subsequently reversed (see Illustration 21). For this purpose he is in the position of the judgment creditor. If the judgment reversed was void (see § 73) and he directed the sale of the debtor's property, or if he knew that the judgment was obtained by fraud, he was a participant in a tort and cannot retain the proceeds of a sale or escape liability for having dealt with the debtor's things.' " 658 So. 2d at 121.

The *Martin* court concluded that the malpractice plaintiff's attorney, an innocent third-party creditor, recovered a judgment to which he was legally entitled. The court stated that the contingency which gave rise to the Lenahans' debt to their attorney occurred when the settlement of the malpractice claim was negotiated, and

none of the subsequent proceedings could affect the original $2,250,000 settlement voluntarily entered into between the Lenahans, Dr. Martin, and his insurance company. 658 So. 2d at 122.

The *Martin* case contains several points applicable to this case. The *Martin* court's statement that the contingency which gave rise to the Lenahans' debt to their attorney occurred when the settlement was negotiated, speaks to the majority's interpretation of K.S.A. 44-536(a). The majority emphasized the language in K.S.A. 44-536(a), which provides that attorney fees rendered in connection with workers compensation claims shall not exceed a reasonable amount or 25 percent of *the amount of compensation recovered.* Under *Martin,* the amount of recovery is measured at the time of judgment, and subsequent proceedings do not affect that amount.

*Martin* also observed that the attorney was a third-party creditor of the client who received a judgment for which he was legally entitled. As an innocent third-party creditor, the attorney was similar to a bona fide purchaser who is not liable if the judgment was valid before reversal, providing he or she had no knowledge of the fraud perpetrated in securing the judgment.

### Kansas Statutes

To support its determination that public policy requires the court to create a cause of action that regulates the legal profession, the majority relies on *Mohamed v. Kerr,* 91 F.3d 1124 (1996), and the Restatement of the Law of Restitution § 74, Comment k. Neither apply to our factual situation.

*Mohamed v. Kerr,* 91 F.3d 1124 (1996), cited by majority, is not an action to recover money damages for a negligent or fraudulent act; it is an interpleader action in the federal court similar to K.S.A. 60-222. Persons having claims against the plaintiff/insurer were joined as defendants. The individuals having claims for the insurance proceeds were required to interplead their claims against the insurer who was subject to multiple liability.

Unlike the federal procedures available in *Mohamed,* in a Kansas interpleader action where an appeal is taken, the appellant, by giving a supersedeas bond, may obtain a further stay of execution of

the judgment. K.S.A. 1999 Supp. 60-262(d). A supersedeas bond is not required where defendant's money is paid into court awaiting final judgment for distribution. Where money is paid to the court, the portion of the judgment which on appeal is determined to be the client's interest in the deposit, is by statute subject to an attorney's lien. The statutory procedures in Kansas protecting a judgment pending appeal demonstrate why the majority's reliance on *Mohamed* is misplaced. In Kansas, under the circumstances set out in *Mohamed*, the contested amount of the judgment would not be distributed to those having claims prior to a final judgment.

## Attorney Lien

Since 1868, Kansas has provided that an attorney has a lien for his or her services upon money due his or her client in the hands of the adverse party, in any matter, action, or proceeding in which the attorney was employed from the time of giving notice of the lien to the adverse party. K.S.A. 7-108. The attorney lien statute provides:

"An attorney has a lien for a general balance of compensation upon any papers of his or her client which have come into the attorney's possession in the course of his or her professional employment, upon money in the attorney's hands belonging to the client, and upon money due to the client and in the hands of the adverse party, in any matter, action or proceeding in which the attorney was employed, from the time of giving notice of the lien to the party; such notice must be in writing, and may be served in the same manner as a summons, and upon any person, officer or agent upon whom a summons under the laws of this state may be served, and may also be served upon a regularly employed salaried attorney of the party." K.S.A. 7-108.

## Impairment of a Contract and Lien

The legislature also enacted K.S.A. 44-536(b), which states:

"(b) All attorney fees in connection with the initial or original claim for *compensation shall be fixed pursuant to a written contract* between the attorney and the employee or the employee's dependents, which shall be *subject to approval by the director* in accordance with this section. Every attorney, whether the disposition of the original claim is by agreement, settlement, award, judgment or otherwise, *shall file the attorney contract with the director* for review in accordance with this section. The *director shall review each such contract and the fees* claimed thereunder as provided in this section and shall approve such contract and fees only if both are in accordance with all provisions of this section. *Any claims for*

*attorney fees not in excess of the limits provided in this section and approved by the director shall be enforceable as a lien on the compensation due or to become due.* The director shall specifically and individually review each claim of an attorney for services rendered under the workers compensation act in each case of a settlement agreement under K.S. 44-521 and amendments thereto or a lump-sum payment under K.S. 44-531 and amendments thereto as to the reasonableness thereof." (Emphasis added.)

In reaching its conclusion, the majority disregards the fact that the attorney was a preferred creditor in the workers compensation award and by statute had a lien on the award and the right to satisfy the lien out of the monthly payments of the judgment.

I agree that reversal of a judgment on appeal is an inherent risk of litigation, and contingent fees are subject to the final judgment obtained. However, the case before this court does not concern a reversal of a judgment appealed; it concerns an award granted in a workers compensation case which was later modified because the worker perpetrated fraud to increase the award. An eventual finding that a client committed fraud in securing a workers compensation award or a judgment in a civil action is not an inherent risk of a secured creditor. Requiring an attorney to insure a fee granted in a workers compensation action until the statute of limitations has expired for fraud of another individual is unreasonable. Under the guise of the responsibility to supervise Kansas attorneys, the majority has ignored the legislative acts and exceeded its constitutional power by creating a cause of action based solely upon the fee arrangement and the public policy of the court.

Since this state was admitted into the Union, the common law, as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object. K.S.A. 77-109. Although the common law is subject to modification by judicial decision in light of changed conditions, the declaration of public policy is normally the function of the legislative branch of government. *Ling v. Jan's Liquors*, 237 Kan.

629, Syl. ¶ 5, 703 P.2d 731 (1985). This case does not concern the examination of applicants for admission to the bar, attorney discipline, or attorney disbarment. Therefore, K.S.A. 7-103 does not provide authority for the Supreme Court to order Goertz to reimburse Excel under the guise of supervision of Goertz as an officer of the court.

Kansas lawyers, beware of the contingent fee contract. The fee you honestly earned in obtaining a judgment for your client is not final but subject to reimbursement in a separate court-created action until the statute of limitations for the possible fraudulent acts of your client has expired. You, not the honest doctor whose expert testimony swayed the jury to award your client the judgment, stand alone as an insurer of your client's honesty.

To my colleagues in the majority: Please note that this court's new responsibility to supervise attorneys who enter into contingent fee contracts is not limited to workers compensation awards. There are other laws and codes enacted by the legislature to protect individuals who have been defrauded. And finally, a simple thought: Are judicially-created laws outside the United States Constitution's prohibition of state government impairing the obligation of contracts? Here, pursuant to legislative acts, the attorney had a contract approved by the director and had exercised his right to obtain a statutory lien on the amount paid as compensation to the worker in the original action! The statutory contract and lien have been abolished by a judicial decree of public policy.

" 'In a well-ordered society it is important that people know what their legal rights are, not only under constitutions and legislative enactments, but also as defined by judicial precedent, and having conducted their affairs in reliance thereon, ought not to have their rights swept away by judicial decree. And this is especially so where rights of property are involved . . . . And it should be left to the legislature to make any change in the law, except perhaps in a most unusual exigency.' " *F. Arthur Stone & Sons v. Gibson*, 230 Kan. 224, 233, 630 P.2d 1164 (1981) (quoting *Freeman v. Stewart*, 2 Utah 2d 319, 322, 273 P.2d 174 [1954]).

ALLEGRUCCI, J., joins the foregoing concurring and dissenting opinion.