277 Kan. 795 (2004)
90 P.3d 940
IN THE MATTER OF JANE DOE, a/k/a VICTORIA ACOSTA, a/k/a/ DELIA BUTANDA, Appellant,
v.
KANSAS DEPARTMENT OF HUMAN RESOURCES, Appellee.
No. 90,124.
Supreme Court of Kansas.
Opinion filed May 14, 2004.
*796 Diane F. Barger, of Dallas, Texas, argued the cause and was on the brief for appellant.
Darren E. Root, Kansas Department of Human Resources, argued the cause and was on the brief for appellee.
The opinion of the court was delivered by
DAVIS, J.:
This case presents the question whether a workers compensation claimant's use of a false name in applying for benefits and lying under oath as to her identity in the proceeding to obtain benefits were fraudulent or abusive acts under K.S.A. 44-5,120 (1993 Furse) even though the claimant was legally entitled to the benefits she received. Jane Doe, a/k/a Victoria Acosta, a/k/a Delia Butanda, appeals from the district court order affirming the final order of the Secretary of Human Resources imposing a civil fine against Butanda for fraudulent or abusive acts under K.S.A. 44-5,120 (1993 Furse). We affirm.

FACTS:
Delia Butanda was an illegal immigrant who sought and obtained employment with National Beef Packing Company (NBP) in Dodge City using an assumed name and social security number. On September 8, 1995, Butanda was injured during the course of her employment. She filed a workers compensation action using *797 the name and social security number of Victoria Acosta. During the workers compensation proceedings, Butanda lied under oath about her identity on four different occasions. (March 18, 1996, November 19, 1996, January 22, 1997, and March 10, 1997) For a detailed statement of the facts involving Butanda's workers compensation claim, see this court's decision in Acosta v. National Beef Packing Co., 273 Kan. 385, 44 P.3d 330 (2002).
On August 17, 1999, the Workers Compensation Division's Fraud and Abuse Unit received a referral from the Kansas Insurance Department indicating that Butanda was using a false name. On November 17, 1999, Investigator Jimmy D. Huff submitted an investigation summary to the Fraud and Abuse Unit. On January 3, 2001, Director of Workers Compensation Philip S. Harness issued a summary order pursuant to K.S.A. 77-537 finding that Butanda had violated K.S.A. 44-5,120(d)(4)(A) and/or (B) (1993 Furse) by using an assumed name and social security number in her workers compensation claim. The summary order indicated that the complaint was received on August 20, 2000. Butanda was assessed a monetary fine of $2,000 pursuant to K.S.A. 44-5,120(g)(1) (1993 Furse). Butanda filed a timely request for hearing on the summary order.
On September 21, 2001, a fraud and abuse hearing was conducted before Hearing Officer Larry Karns regarding the summary order. At the hearing, Butanda admitted she had intentionally testified her name was Victoria Acosta during workers compensation hearings and depositions, but denied that such constituted fraudulent and abusive acts.
In the December 10, 2001, amended order granting penalties and costs, the hearing officer found that Butanda falsely testified under oath in three depositions (March 18, 1996, November 19, 1996, and March 10, 1997), and in one hearing (January 22, 1997), that her name was Victoria Acosta in connection with her attempt to obtain workers compensation benefits. Butanda also used the assumed name when she filed her application for workers compensation benefits.
The hearing officer concluded Butanda's intentional failure to disclose her identity and her use of an assumed name in an attempt *798 to obtain benefits constituted a false and misleading statement in violation of K.S.A. 44-5,120(d)(4)(A) (1993 Furse), and the misrepresentation and concealment of her true identity was a misrepresentation and concealment of a material fact in violation of subsection 44-5,120(d)(4)(B). The hearing officer reasoned that a person's identity was a material fact, enabling an employer to obtain and verify previous medical and wage history, which are relevant in computing permanent partial disability benefits and in the reduction of awards by the amount of preexisting functional impairment under K.S.A. 44-501(c) (1993 Furse). Butanda was ordered to pay $5,000 in penalties ($1,000 for each false and misleading statement), pursuant to K.S.A. 44-5,120(g) (1993 Furse), and $794.55 in costs.
Butanda petitioned the Secretary of the Kansas Department of Human Resources to review the amended order pursuant to K.S.A. 2003 Supp. 77-527. On May 29, 2002, the Secretary Designee, Douglas A. Hager, issued a final order affirming the amended order:
"Liability under the Fraud and Abuse section `rests only with persons who act willfully or intentionally.' Excel Corp. v. Jimenez, 269 Kan. 291, 296 (2000). `Only those who have actually committed a fraudulent or abusive act may be liable.' Id. It is the conclusion of the Secretary's Designee that the presiding officer's determination below should be affirmed. Although Petitioner's deceit appears to have been rooted in a desire to secure employment, it is nonetheless true that she intentionally and willfully made false and misleading statements and misrepresented or concealed a material fact, by withholding her true identity, in attempting to obtain payment of workers compensation benefits. As noted in the presiding officer's Amended Order, a claimant's preexisting medical condition, work history and any preexisting impairments are material facts in a workers compensation proceeding because of the manner in which permanent partial disability benefits are computed and because awards are reduced by the amount of preexisting functional impairment. [Citation omitted.] At the very least, Petitioner's repeated acts of intentionally lying under oath while attempting to obtain payment of workers compensation benefits constituted an abuse of the workers compensation system.. . ."
Butanda appealed this decision to the district court according to the provisions of the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 et seq. On December 16, 2002, the district court, in a memorandum decision, *799 affirmed the final order of the Department of Human Resources. Butanda appealed from the memorandum decision, and this court has jurisdiction by transfer on its own motion pursuant to K.S.A. 20-3018(c).
Butanda identifies the following five questions in her appeal: (1) Whether her actions were fraudulent or abusive under K.S.A. 44-5,120(d)(4)(A) or (B) (1993 Furse); (2) whether the final order entered was based upon alienage and therefore unconstitutional; (3) whether her employer's participation in her actions constitutes a defense; (4) whether she was denied due process of law; and (5) whether the district court's refusal to remand for additions to the record on appeal was an abuse of discretion.

Standard of Review
When an administrative agency action is appealed to the district court pursuant to KJRA and then appealed from the district court to this court, we review the agency's decision as though the appeal had been made directly to us, and we are subject to the same limitations of review as the district court. Pitts v. Kansas Dental Bd., 267 Kan. 775, 776, 987 P.2d 348 (1999). Our scope of review is set forth in K.S.A. 77-621(c)(1) through(8). More specifically, as discussed below, our scope of review is governed by K.S.A. 77-621(c)(1), (c) (4), and (c) (5). We are called upon to interpret K.S.A. 44-5,120(d)(4)(A) & (B) (1993 Furse), as well as statutory provisions for Butanda's hearing and the constitutional issues raised. The facts are not in dispute. Thus, our scope of review is unlimited.

1. Whether Butanda's actions were fraudulent or abusive under K.S.A. 44-5,120(d)(4)(A) or (B) (1993 Furse).
Resolution of this issue involves the interpretation of provisions of the Workers Compensation Act (Act). Interpretation of a statute is a question of law, and this court's review is unlimited. Duarte v. DeBruce Grain, Inc., 276 Kan. 598, 602, 78 P.3d 428 (2003). While an appellate court gives deference to the Board's interpretation of the law, if such interpretation is applied erroneously, the court may grant relief. Burton v. Rockwell International, 266 Kan. 1, 5, 967 P.2d 290 (1998).
*800 "The fundamental rule of statutory construction guiding this court's determination is that the intent of the legislature governs when that intent can be ascertained from the statute. When a statute is plain and unambiguous, we must give it the effect intended by the legislature rather than determine what the law should or should not be." State v. Kleypas, 272 Kan. 894, 949, 40 P.3d 139 (2001).
In determining whether Butanda's use of an assumed name constituted a fraudulent or abusive act under K.S.A. 44-5,120(d)(4)(A) or (B) (1993 Furse), the district court found that it was undisputed that she received workers compensation benefits and that she made numerous false statements regarding her identity. In concluding that Butanda had misrepresented or concealed a "material fact," the district court reasoned:
"In a world where individuals are defined more and more by the records maintained by the various agencies and organizations, e.g., credit bureaus, the Department of Motor Vehicles, hospitals, etc., the manner in which those records are kept and filed has become increasingly important. Most agencies, organizations, and other such entities use a person's name and often their social security number to properly identify and index that person. Thus, that person's name and social security number become essential to later recovering the required information when it is needed. In the case at hand, the State persuasively argues that a person's name is important to determine the employment and medical history of the injured worker so that a proper award can be calculated. Without a person's name and social security number, an agency or organization would be unable to properly investigate and gather information on that individual, or at the very least, it would be severely handicapped in its efforts to uncover information. As a result, this Court finds a person's name and social security number are important and are, therefore, material facts in a workers compensation action.
"The simple truth of the matter is that Petitioner lied about her identity on numerous occasions in order to obtain workers compensation benefits. Her entitlement to those benefits is no excuse for intentionally misrepresenting herself. The question before this Court is not whether she was entitled to benefits but rather whether she made any false statements or misrepresented a material fact in obtaining them. Therefore, it is the opinion of this Court that Petitioner's actions of intentionally misrepresenting and concealing her true identity were fraudulent and abusive acts as defined by the Workers Compensation Act. Petitioner is an adult and therefore responsible for her own actions. Her attempts to divert that responsibility and needlessly cloud the issues in this case are meritless. The Final Order of Secretary Designee Douglas A. Hager was reasonable and was a correct interpretation of the law in Kansas. To hold otherwise would eviscerate the workers compensation system and allow dishonesty, greed and corruption to become commonplace."
*801 Butanda argues that the use of an assumed name was not a fraudulent or abusive act under 44-5,120(d)(4)(A) or (B). Butanda correctly points out that the district court used the wrong version of the statute. The applicable statute, K.S.A. 44-5,120 (1993 Furse), provides in relevant part:
"(d) Fraudulent or abusive acts or practices for purposes of the workers compensation act include, but are not limited to, willfully or intentionally:
"(4) obtaining, denying or attempting to obtain or deny payment of workers compensation benefits for any person by:
"(A) Making a false or misleading statement;
"(B) misrepresenting or concealing a material fact"

(A) K.S.A. 44-5,120(d)(4)(A) (1993 Furse)
The plain language of the statute defines what "fraudulent or abusive acts or practices are for purposes of the workers compensation act." K.S.A. 44-5,120(d) (1993 Furse) (Emphasis added.) The statute defines fraudulent or abusive acts or practices in a nonexclusive list. Excel Corp. v. Jimenez, 269 Kan. 291, 295, 7 P.3d 1118 (2000); see also Elliott v. Dillon Companies, 21 Kan. App. 2d 908, 913, 908 P.2d 1345, aff'd 260 Kan. 411, 918 P.2d 1305 (1996) (distinguishing a case that rejected a claim that employees could bring common-law actions for fraud in interpreting K.S.A. 44-5,121 (1993 Furse) because it did not interpret a statute which authorizes a cause of action to recover economic loss resulting from fraudulent or abusive conduct). In the case we now consider, the district court concluded that Butanda willfully and intentionally committed one of the 20 fraudulent or abusive acts enumerated in the statute. Thus, for the purposes of the Act, Butanda's false statements fit within the provisions of K.S.A. 44-5,120(d)(4)(A) (1993 Furse).
Butanda argues that the test under the statute is whether she testified falsely or concealed or misrepresented a material fact solely to obtain or attempt to obtain benefits that she was not entitled to under the Act. Butanda relies upon the traditional definition of fraud, which requires proof that: "(1) An untrue statement known to be untrue by the party making it and made with the intent to deceive; (2) reasonable and justifiable reliance by the victim on the truth of the statement; and (3) damages as a result of that *802 reliance." See Tetuan v. A.H. Robins Co., 241 Kan. 441, Syl. ¶ 2, 738 P.2d 1210 (1987); Nordstrom v. Miller, 227 Kan. 59, Syl. ¶ 6, 605 P.2d 545 (1980); Robinson v. Shah, 23 Kan. App. 2d 812, 819, 936 P.2d 784 (1997).
It must be emphasized again that K.S.A. 44-5,120(d) (1993 Furse) defines what "fraudulent or abusive acts or practices are for purposes of the workers compensation act." The making of the false statements by Butanda in obtaining workers compensation benefits is for purposes of the Act defined as fraudulent. "The Workers Compensation Act is substantial, complete, and exclusive, covering every phase of the right to compensation and of the procedure for obtaining it." Acosta, 273 Kan. at 396. Thus, an intent to deceive and damages normally associated with fraud, indicated by Butanda's authority, are not included in the statutory definition.
Assuming arguendo that the case law definition of fraud applies to Butanda's false statements, her statement also fit the definition of "abusive" as that term is defined by K.S.A. 44-5,120 (1993 Furse). Although the district court did not make this distinction in finding Butanda's actions were fraudulent and abusive, it affirmed the final order of the Department of Human Resources, which concluded: "At the very least, Petitioner's repeated acts of intentionally lying under oath while attempting to obtain payment of workers compensation benefits constituted an abuse of the workers compensation system." (Emphasis added.) Thus, making false statements by lying under oath in workers compensation proceedings are abusive notwithstanding Butanda's legal entitlement to the benefits obtained.
We conclude that the district court determination that Butanda's actions in lying to obtain benefits under the Act were fraudulent and abusive acts under K.S.A. 44-5,120 (d)(4)(A) (1993 Furse) is correct.

(B) K.S.A. 44-5,120(d)(4)(B) (1993 Furse)
While a finding of Butanda's violation of K.S.A. 44-5,120(d)(4)(A) (1993 Furse) is sufficient to affirm the district court, the question of whether her actions constituted a violation of K.S.A. 44-5,120(d)(4)(B) (1993 Furse), the obtaining of workers compensation *803 benefits by concealing a material fact, is a question ripe for resolution by this court. The answer to this question depends upon whether the concealment of her true identity amounted to the concealment of a material fact.
"Material fact" is not defined under the Act. However, material fact has been defined in cases involving a fraudulent misrepresentation claim: "`A fact is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction involved.'" Koch v. Koch Industries, Inc., 203 F.3d 1202, 1230-31 (10th Cir. 2000) (citing Timi v. Prescott State Bank, 220 Kan. 377, 389, 553 P.2d 315 (1976); see also Orr v. Holiday Inns, Inc., 6 Kan. App. 2d 335 Syl. ¶ 1, 627 P.2d 1193, aff'd 230 Kan. 271, 634 P.2d 1067 (1981) (when the Workers Compensation Act is raised as a defense to a common-law negligence action, the identity of the employer of the injured worker is a material fact).
Butanda admits that her preexisting medical condition, work history, and any preexisting impairments are material facts in a workers compensation proceeding because of the manner in which permanent partial disability benefits are computed. However, she argues that NBP's actions in terminating her employment made her eligible for a permanent partial general disability compensation award beyond her functional rating before she testified to the false identity. She also states that she eventually provided her full work history to NBP, but NBP had no interest in her medical history based on its failure to inquire, with five opportunities to do so.
Butanda's argument ignores the fact that she filed the claim for workers compensation under the false identity before she was terminated from her position. She also fails to note that the prior employment information she listed in her application was false, and at her April 21, 2000, deposition, she refused to answer any questions which might incriminate her, including questions as to her name, social security number, whether she had any prior work-related injuries, and whether she had worked for any other employer.
Finally, Butanda's medical condition, work history, and any preexisting impairments are relevant because permanent partial disability *804 benefits are computed by examining Butanda's work tasks for the past 15 years. Moreover, any award is reduced by the amount of preexisting functional impairment. See K.S.A. 44-501(c) (1993 Furse); K.S.A. 44-510e (1993 Furse). Without knowledge of Butanda's true identity, NBP would not be able to obtain and verify her previous medical or work history. Because of the importance of accurate information in the establishment of final awards, we conclude that one's true identity in a worker compensation proceeding is a material fact. Thus, its concealment or its misrepresentation is the concealment or misrepresentation of a material fact. Contrary to Butanda's contention, it does not matter whether the employer actually inquired into these areas; rather, it is the fact that Butanda intentionally and willfully concealed the material fact of her true identity in the proceedings which gives rise to the finding that her acts of concealment constituted both fraudulent and abusive acts under the statute.
We conclude that the district court determination that Butanda's intentional and willful acts in misrepresenting and concealing the material fact of her identity constituted fraudulent and abusive acts under K.S.A. 44-5,120(d)(4)(B) (1993 Furse) is also correct.

2. Whether the final order entered was based upon alienage and therefore unconstitutional.
The district court ruled that Butanda's contention that the final order was unconstitutionally based on alienage was meritless. It reasoned that no indication was given in the final order or the amended order that the Secretary Designee or the hearing officer ever gave any consideration to Butanda's alienage when considering whether to assess fines for her fraudulent or abusive acts.
Butanda argues that by adopting the Board's orders dated November 9, 1999, and November 28, 2000, the hearing officer did consider alienage as a basis for his finding and by affirming the totality of the amended order, the Secretary Designee also considered alienage in reaching the final order. Butanda argues the amended order specifically adopted these orders in findings of fact No. 21 and No. 22:

*805 "On November 9, 1999, the Appeals Board for the Kansas Division of Workers Compensation concluded in the underlying workers compensation proceedings that `individuals who misrepresent their true identity, depending on the circumstances, may have committed fraud or serious misconduct that may be grounds to void the initial award ab initio. It cannot be genuinely argued that such misrepresentation is harmless.' (Appeals Board Order dated November 19, 1999, p. 3-4). In that same Order, the Appeals Board concluded that there had been a `preliminary showing of fraud or serious misconduct.' (Appeals Board Order dated November 19, 1999, p. 5).
"On November 28, 2000, the Appeals Board for the Kansas Division of Workers Compensation found that the Administrative Law Judge `properly set aside the February 2, 1999, Order awarding claimant benefits. Claimant concealed and misrepresented her identity. Therefore, respondent and its insurance carrier could not investigate or verify employment or medical history.' (Appeals Board Order dated November 28, 2000, p. 7). The Appeals Board also concluded: `appellant has intentionally misrepresented her true name and identity. Because of the manner in which permanent partial general disability benefits are computed, a worker's true name and identity are relevant and material. It is not only the misrepresentation that claimant made in her employment application with Respondent that is egregious. But it is also the misrepresentation and concealment that was practiced upon the respondent and insurance carrier in this claim.' (Appeals Board Order, November 28, 2000, p. 6, paragraph 3) (Emphasis added.)"
Regarding alienage, the November 9, 1999, order found in relevant part: "National Beef and its insurance carrier are correct that an individual's status as a citizen or an alien may affect the computation of the permanent partial general disability rating." Likewise, the November 28, 2000, order discussed the appellant's immigration status:
"[T]he Board has not found that claimant is an illegal alien or that claimant cannot legally work in the United States. Second, if claimant could not legally work in the United States, that factor alone would not prevent her from recovering workers compensation benefits. On the other hand, it cannot be ruled out that there may be some situations where a worker's legal status may be relevant in determining whether there has been a good faith effort to find appropriate employment or in determining whether the difference in a worker's pre-and post-injury wages has been caused by a work-related injury or some other reason."
Butanda's argument is without merit. Although portions of the November 9, 1999, and November 28, 2000, orders discuss Butanda's alienage in determining whether her benefits could be calculated, the portions of these orders which were cited in the *806 amended order did not refer to alienage. Further, Acosta reversed these orders in concluding that the Board did not have jurisdiction in a review and modification proceeding to vacate ab initio Butanda's previous award of $57,936.72. See Acosta, 273 Kan. at 398.
Butanda contends that the trial court's use of the computation of permanent partial general disability benefits as one of the bases for affirming the final order was unconstitutional because her alienage was an integral part of that basis. She cites Jurado v. Popejoy Const. Co., 253 Kan. 116, 126, 853 P.2d 669 (1993), in which this court held that statutory classification based on alienage was subject to strict scrutiny, and disparate treatment between employees with nonresident alien dependents and other employees is unconstitutional and violative of the Equal Protection Clauses of the Kansas and the United States Constitutions.
However, Butanda fails to recognize that Acosta affirmed summary judgment in her favor for $57,936.72 in temporary total and permanent partial general disability compensation. See 273 Kan. at 400-01. Butanda does not argue that her alien status altered the calculation of the benefits that she actually received. Butanda is not being penalized based on her alien status, but for her actions in intentionally and willfully using a false identity throughout the workers compensation proceedings.
Butanda also cites Reinforced Earth Co. v. W.C.A.B., 749 A.2d 1036 (Pa. Commw. 2000), in which the Pennsylvania appellate court concluded that denial of benefits to an illegal alien due to his immigration status would reward an employer who failed to properly ascertain an employee's immigration status. Butanda fails to recognize that this case was affirmed and remanded in Reinforced Earth Co. v. W.C.A.B., 570 Pa. 464, 810 A.2d 99 (2002). This case does not support Butanda's position.
The trial court properly concluded that the amended order and the final order were not unconstitutionally based on alienage.

3. Whether employer participation constitutes a defense.
The district court found that the question of whether the employer "actively and knowingly participated" in the alleged fraudulent or abusive acts was irrelevant to Butanda's fraudulent and *807 abusive acts. The district court concluded that this issue was moot because the knowledge or activities of the employer would not make Butanda any more or any less responsible for her own acts.
Butanda argues that the agency was precluded from finding that she committed a fraudulent or abusive act because NBP actively and knowingly participated in the alleged acts by ignoring certain information that she provided in the January 6, 1994, employment application. Specifically, she disclosed that she was prevented from lawfully working in the country because of VISA or immigration status, that she had lived in Dodge City for a year but had worked at a Dodge City restaurant 6 months prior to moving to Dodge City, and that she provided NBP with a Nebraska identification card issued during the time she claimed she was living in Kansas.
The penalties assessed against Butanda were for her actions during the workers compensation proceedings. While it is true that NBP did not encourage Butanda to use a false name in the workers compensation proceeding, NBP knew or should have known that Butanda was an undocumented alien and yet was willing to look the other way when it hired her. NBP's complicity does not change the fact that Butanda filed an application for workers compensation benefits using a false identity and continued to identify herself by the assumed name under oath throughout those proceedings.
The statutory language provides Butanda no defense based upon an employer's actions. It must also be emphasized that 44-5,120 proceedings are not between Butanda and the employer but are concerned with whether Butanda committed a fraudulent or abusive act in obtaining workers compensation benefits. The imposition of penalties does not benefit the employer; they are paid to a workers compensation fee fund. K.S.A. 44-5,120(k) (1993 Furse).

4. Whether she was denied due process of law.
The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Winston v. Kansas Dept. of SRS, 274 Kan. 396, 409, 49 P.3d 1274, 1283 (2002), cert. denied 537 U.S. 1088 (2002). Whether due process has been accorded in a particular case is a *808 question of law. In re Habeas Corpus Application of Pierpoint, 271 Kan. 620, 627, 24 P.3d 128 (2001).
The district court identified the real issue to be addressed as whether the Workers Compensation Division engaged in any unlawful procedures or failed to follow proper procedure as required by K.S.A. 77-621(c)(5). K.S.A. 44-5,120(e) provides in relevant part:
"Whenever the director . . . has reason to believe that any person has engaged or is engaging in any fraudulent or abusive act or practice in connection with the conduct of Kansas workers compensation insurance, claims, benefits or services in this state, . . . the director . . . shall issue and serve upon such person a summary order or statement of the charges with respect thereto and shall conduct a hearing thereon in accordance with the provisions of the Kansas administrative procedure act. Complaints filed with the director . . . may be dismissed by the director . . . on [his or her] own initiative, and shall be dismissed upon the written request of the complainant, if the director . . . has not conducted a hearing or taken other administrative action dismissing the complaint within 180 days of the filing of the complaint."
In concluding that the Division of Workers Compensation did not engage in any unlawful procedures or fail to follow proper procedure, the trial court found:
"[A] summary order/complaint was issued by the Director of the Workers Compensation Division, Phillip Harness, on January 3, 2001, thereby making Petitioner aware of the charges against her and satisfying the requirement of K.S.A. 44-5,120(e). Although more than 180 days passed between the filing of the summary order on January 3, 2001, and the fraud and abuse hearing conducted on September 21, 2001, Petitioner apparently never filed a request to have the complaint dismissed pursuant to K.S.A. 44-5,120(e), therefore, the issue is moot.
"The next requirement of K.S.A. § 44-5,120(e) mandates a hearing be conducted in accordance with the Kansas Administrative Procedure Act (KAPA) § 77-501 et seq. K.S.A. § 77-513 provides guidance on the applicable procedures for hearings....
"Contrary to the assertions by Petitioner that she was denied the benefit of a hearing or the opportunity to present evidence, a fraud and abuse hearing was conducted on September 21, 2001, during which time Petitioner was given the opportunity to present evidence for herself. Statements made otherwise by Petitioner in her brief are a blatant misrepresentation of fact and are a disservice to the administration of justice.
"The Workers Compensation Act provides for a hearing in accordance with KAPA, which indicates in K.S.A. 77-513 that hearings are governed by K.S.A. 77-513 *809 through 77-532. The Kansas legislature's intent, concerning which portions of KAPA are to be applied to a hearing, is unambiguous. Arguments made by Petitioner that K.S.A. 77-511, which is not one of the statutes enumerated by K.S.A. 77-513, imposes any duties upon the Division of Workers Compensation are erroneous and therefore irrelevant and will not be considered further."
On appeal, Butanda first argues she was denied due process because the Division of Workers Compensation did not notify her of the complaint within 30 days and did not approve or deny the complaint within 90 days after receipt of the complaint pursuant to K.S.A. 77-511. Other than her own contention, Butanda provides no authority or reasons concerning her claim that K.S.A. 77-511 applies. Issues not briefed are deemed abandoned. State v. Brown, 272 Kan. 843, 844, 35 P.3d 910 (2001).
Nevertheless, an examination of K.S.A. 77-511 and K.S.A. 77-513 reveals that the trial court determination that 77-513 applied is correct. K.S.A. 44-5,120(e) provides that the hearing should be conducted in accordance with the provisions of the Kansas Administrative Procedure Act (KAPA). Both statutes are part of KAPA. K.S.A. 77-511 provides in part:
"(a) Except to the extent that the time limits in this subsection are inconsistent with limits established by another statute, a state agency shall process an application for an order on which a statute provides for a hearing under this act as follows:
(1) Within 30 days after receipt of the application, the state agency shall acknowledge receipt thereof and inform the applicant of the name, official title, mailing address and telephone number of a state agency member or employee who may be contacted regarding the application. As soon as practicable, the state agency shall notify the applicant of any apparent errors or omissions. Failure to detect such errors or omissions does not preclude the state agency from raising them at a later stage of the proceeding."
K.S.A. 77-513 provides:
"When a statute provides for a hearing in accordance with this act, the hearing shall be governed by K.S.A. 77-513 through 77-532, and amendments thereto, except as otherwise provided by:
(a) A statute other than this act; or
(b) K.S.A. 77-533 through 77-541, and amendments thereto."
In this case, neither the complaint nor the summary order is an application for an order under K.S.A. 77-511. In contrast, K.S.A. *810 77-513 unambiguously provides that when a statute provides for a hearing in accordance with KAPA, as does 44-5,120, the hearing is governed by other statutes which do not include K.S.A. 77-511. As such, Butanda was not denied due process by the Director's failure to comply with K.S.A. 77-511.
Butanda next argues that she was denied due process of law when the director waited over a year after receiving the results of the investigation on November 17, 1999, before issuing the summary order. She argues there was no need to protect the public interest pursuant to K.S.A. 77-537(2). Butanda also contends that she was denied due process of law when she was not given a right to a hearing before she was found guilty in the summary order.
K.S.A. 77-537 provides in relevant part:
"(a) A state agency may use summary proceedings, subject to a party's request for a hearing on the order, if:
(1) The use of those proceedings in the circumstances does not violate any provision of law; and
(2) the protection of the public interest does not require the state agency to give notice and an opportunity to participate to persons other than the parties.
"(b) The state agency shall serve each party with a copy of the order in a summary proceeding in the manner prescribed by K.S.A. 77-531, and amendments thereto. The order shall include at least:
(1) A statement of the state agency's action and, if unfavorable action is taken, a brief statement of the reasons for the action;
(2) notice of the time and manner for requesting a hearing on the order, as provided in K.S.A. 77-542."
Although there was a delay in the issuance of the summary order, the director complied with this provision of KAPA by issuing a summary order on January 3, 2001, and informing Butanda that she must request a hearing within 15 days of service of the order. See K.S.A. 77-542. Butanda was provided a full hearing on the matter before the hearing officer on September 21, 2001, where she had the opportunity to be heard, present evidence, and cross-examine witnesses.
Butanda argues she was denied due process of law when the hearing officer denied her motion to take the deposition of the director. She claims she had a right to ask him about the factual basis for the complaint and the right to ascertain the exact date *811 that the complaint was received. The summary order issued by the director provided Butanda with the specific charges she was alleged to have violated subject to her request for a hearing. If she requested no hearing, the allegations in the order are deemed admitted. However, she was granted a full hearing upon her request with the right to confront witnesses through cross-examination and present her own evidence. The need to depose the director to determine the factual basis for the complaint was therefore properly denied. Her further contention that the director would establish a date for the complaint was based upon her contention that K.S.A. 77-511 applied. Our determination that K.S.A. 77-513 applied demonstrates that a deposition of the director for this purpose was not necessary. The denial of her request to depose the director did not deny Butanda due process.
Butanda argues she was denied due process of law when the hearing officer who serves as a special administrative law judge for the Division of Workers Compensation refused to recuse himself. She argues that he was not an objective trier of fact because he is under the supervision of the director, the complainant in this case.
K.S.A. 2003 Supp. 77-514(a) provides that the agency head, one or more members of the agency head, an administrative law judge assigned by the office of administrative hearings, or, unless prohibited by K.S.A. 77-551, one or more persons designated by the agency head may be the presiding officer. The director complied with this statute by appointing a special administrative law judge, Larry Karns, to serve as the hearing officer. Butanda's argument is akin to a defendant arguing that he cannot be represented by a public defender because the State is paying his fees. This argument is without merit.
Likewise, Butanda argues that she was denied due process when the director appointed a nonobjective trier of fact in Secretary Designee Hager because he is an attorney for the Kansas Department of Human Resources and represents the interest of the director and the Division of Workers Compensation. This argument likewise fails, as the appointment was within his authority pursuant to K.S.A. 2003 Supp. 77-514(a), and Butanda failed to petition for his disqualification under K.S.A. 2003 Supp. 77-514(c).
*812 Pursuant to K.S.A. 44-5,120(e), Butanda was given notice of the complaint by receipt of the summary order. Although the hearing was conducted beyond 180 days later, Butanda failed to request that the case be dismissed as required by the statute. Butanda was given the opportunity to be heard at the fraud and abuse hearing on September 21, 2001, and she has had the benefit of two additional levels of appeal. Butanda was not deprived of her right to due process.

5. Whether the district court's refusal to remand was an abuse of discretion.
"Remand under the KJRA is discretionary. K.S.A. 77-622(b)." Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs, 256 Kan. 426, 447, 885 P.2d 1233 (1994).
Within 30 days after service of the petition for judicial review, the agency shall transmit the original or a copy of the agency record, and the court may permit subsequent additions to the record. K.S.A. 77-620(a) and (f). Additional evidence in addition to the agency record may be added if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding the unlawfulness of procedure or of a decision-making process. K.S.A. 77-619(a)(2).
"(b) The State agency record consists only of:
(1) Notices of all proceedings;
(2) any prehearing order;
(3) any motions, pleadings, briefs, petitions, requests, and intermediate rulings;
(4) evidence received or considered;
(5) a statement of matters officially noticed;
(6) proffers of proof and objections and rulings thereon;
(7) proposed findings, requested orders and exceptions;
(8) the record prepared for the presiding officer at the hearing, together with any transcript of all or part of the hearing considered before final disposition of the proceeding;
(9) any final order, initial order, or order on reconsideration; and
(10) staff memoranda or data submitted to the presiding officer.
"(c) Except to the extent that this act or another statute provides otherwise, the state agency record, excluding matters under paragraph (10) of subsection (b), constitutes the exclusive basis for state agency action in formal hearings and for judicial review thereof." K.S.A. 77-532.
*813 The trial court memorandum decision and order was filed on December 16, 2002, and Butanda filed a notice of appeal with the Court of Appeals. On June 6, 10, and 11, 2003, Butanda filed a request and two amended requests with the district court for additions to the agency record pursuant to Supreme Court Rule 3.02 (2003 Kan. Ct. R. Annot. 20) and K.S.A. 77-532. Butanda argued that an incomplete agency record had been delivered to the clerk's office, and she listed 22 items which had either been admitted into evidence at the fraud and abuse hearing, or were other motions and orders. Of significance to this appeal, the motion seeking to recuse the hearing officer and the order denying the same, the petition and order denying mandamus involving Butanda's desire to depose the director, the November 28, 2000, Board order, and the summary order were added to the record on appeal.
The record on appeal includes 26 items added to the appeal record. Butanda seeks a remand, claiming that these items were not before the district court when it issued its December 16, 2002, order. Butanda argues that the absence of some of these items from the agency record before the district court prevented it from adequately addressing her claims regarding alienage and due process.
Regarding alienage, Butanda argues that the district court did not have the November 9, 1999, and November 28, 2000, Board orders, that the hearing officer relied upon the Board's findings in the amended order, and that the amended order was affirmed in the final order. As such, she contends the district court was unable to determine whether alienage had been part of the earlier decisions without these portions of the record on appeal.
Contrary to Butanda's assertion, the November 9, 1999, order was part of the agency record before the district court. Additionally, although not signed and dated, the November 28, 2000, order was also part of the agency record in its entirety. Even if these orders were not before the trial court, its conclusions that alienage played no part was the correct determination. Thus, her argument fails.
Butanda also argues that the district court could not adequately consider her due process claims without the inclusion of the refusal of the hearing officer to recuse himself, the denial of Butanda's request to take the director's deposition, and the summary order.
*814 The additions to the record indicate that Butanda filed a motion asking the hearing officer to recuse himself because he refused to issue a subpoena for the director and because he works under the supervision of the director. The hearing officer denied the motion, reasoning that he was an outside attorney working under contract for the Division of Workers Compensation to hear fraud and abuse cases; that he was not an employee of the Division and the director was not his supervisor; that the reasons for dismissal of the subpoena had been addressed in a previous order; that Judge Bullock's dicta was not applicable because an evidentiary hearing was going to be held; and that no bias, prejudice, or interest had been alleged or proven in order for him to be disqualified under K.S.A. 2003 Supp. 77-514.
As discussed above, even if these items were included in the agency record, the district court would have reached the same conclusion. The district court did not abuse its discretion in refusing to remand this case for additions to the record.
Affirmed.
LUCKERT, J., not participating.
PATRICK McANANY, J., assigned.[1]
NOTES
[1] REPORTER'S NOTE: Judge McAnany, of the Kansas Court of Appeals, was appointed to hear case No. 90,124 vice Justice Luckert pursuant to the authority vested in the Supreme Court by K.S.A. 20-3002(c).